UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANCY DAWKINS,

              Plaintiff,

-against-

NYPD; NEW YORK-PRESBYTERIAN
HOSPITAL; BROOKLYN METHODIST
HOSPITAL; GRACIE SQUARE HOSPITAL;
BRENDA HORTON,

              Defendants.

25-CV-6341 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

    Plaintiff, who is appearing *pro se*, brings this action alleging violations of her constitutional rights. By order dated February 3, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the following reasons, the Court dismisses the complaint with 30 days' leave to replead.

## STANDARD OF REVIEW

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

    While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially

plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that

the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must

accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of

action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating

legal conclusions from well-pleaded factual allegations, the Court must determine whether those

facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff names as Defendants the New York Police Department ("NYPD"), New York

Presbyterian Hospital ("NYPH"), Brooklyn Methodist Hospital ("BMH), Gracie Square Hospital

("GSH"), and Brenda Horton, who is identified only as Plaintiff's "adversary." (ECF 1 at 15.)

Plaintiff provides a Brooklyn address for Horton, which appears to be a private residence. (ECF

1 at 15; ECF 1-2 at 3.) The following facts are drawn from the complaint.[1]

On April 4, 2025, Plaintiff went to NYPH because she was "unable to tolerate food."

(ECF 1 at 2.) Although "the plan" had been for Plaintiff to undergo an endoscopy, she only

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

received medication. (*Id.*) Dr. Lily Du Yan noted on Plaintiff's electronic health record ("EHR") that Plaintiff had a "nodule" and "cysts." (*Id.* at 3.) Yan also indicated that Plaintiff was experiencing "paranoid delusions." (*Id.* at 4.) Plaintiff denies that she was delusional and asserts that Yan is not a psychiatrist. (*Id.*) According to Plaintiff, NYPH deprived her of adequate medical care during that visit. (*Id.* at 5.) Plaintiff contacted NYPH multiple times asking that Yan's assessment of her mental health be removed from the EHR, but she got no response. (*Id.* at 7-8.)

Plaintiff claims that, approximately six weeks later, on May 20, 2025: (1) someone from NYPH called her 34 times, but she did not answer any of the calls; (2) someone from NYPH called 911 three times and falsely reported that, according to "a friend" of Plaintiff's, Plaintiff was suicidal; and (3) Brenda Horton defamed Plaintiff by falsely claiming that Plaintiff had set fire to an apartment building. (*Id.* at 19-20.) Plaintiff questions how Horton's "story 'perfectly complement[ed]' the fabrication perpetrated by the 911 callers?" (*Id.*) According to Plaintiff, the false information in the 911 calls ended up in her NYPH EHR as "evidence" of her delusions. (*Id.* at 13.) As a result of these events, NYPD officers transported Plaintiff to BMH. (*Id.* at 9-12.) Plaintiff mentions two police officers in the complaint—Franddy Duran and Anthony Peralta— but she does not name them as Defendants in the caption of the complaint or make any specific allegations against them. (*Id.* at 15.)

Once Plaintiff was at BMH, she tested negative "for all drugs and alcohol," which she claims differed from what the NYPH EHR showed. (*Id.* at 22.) The following day, May 21, 2025, Plaintiff was transported to GSH in Manhattan. Plaintiff claims that the transfer was not authorized by medical staff with the proper credentials, and that the requisite medical documentation was not completed and certified before the transfer. She further claims that upon

3

transfer to GSH she was unnecessarily strip searched. Plaintiff remained hospitalized at GSH for one week, until May 28, 2025. (*Id.* at 27.)

Thereafter, the NYPD refused to provide Plaintiff with the name of the 911 caller. Plaintiff has pending "FOIL [Freedom of Information Law] requests seeking that information and access to "Body Cam footages." (*Id.* at 13-14.) According to Plaintiff, the NYPD's refusal to provide her with the name of the caller makes the agency "complicit" in perpetrating the "unlawful hoax 911 calls." (*Id.* at 13-14.)

Plaintiff seeks to have all of the allegedly inaccurate information about her mental health expunged from her EHR, to enjoin Defendants from involuntarily committing her in the future, and an order of protection against Brenda Horton.

## DISCUSSION

### A.    Hospitals and Brenda Horton

Because Plaintiff asserts that Defendants violated her constitutional rights, the Court construes her complaint as arising under 42 U.S.C. §1983. A claim for relief under Section 1983 must allege facts showing that defendants acting under the color of a state "statute, ordinance, regulation, custom or usage" ("state actors"), violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)). Private individuals and entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some

right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor.") (internal quotation marks and citation omitted, emphasis in original).

In analyzing whether a private entity is functioning as a state actor for the purpose of Section 1983, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (internal quotation marks and citation omitted). The activity of a private entity may be considered state action: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the State provides significant encouragement to the entity, the entity willfully participates in joint activity with the State, or the entity's functions are entwined with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted). The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker,* 457 U.S. 838).

Receiving public funds does not turn a private actor into state actor, and the actions of private contractors do not become government action simply because of a contractors' engagement in government contracts. *See Rendell-Baker*, 457 U.S. at 840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841. In other words, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Here, Plaintiff sues private hospitals, and alleges that she was misdiagnosed, mistreated, involuntarily committed, and possibly forcibly medicated. A private hospital and its staff are not

state actors for their actions in connection with committing an individual to a psychiatric hospital and medicating that individual against the individual's will. *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (concluding that, under Circuit precedent, "the forcible medication and hospitalization of [the plaintiff] by private health care providers [could not] be attributed to the state," even though hospital received federal funding and was highly regulated); *Doe v. Rosenberg*, 166 F.3d 507 (2d Cir. 1999) (involuntary hospitalization and medication was "not traditionally within the exclusive prerogative of the state," and the other tests for state action were also not satisfied); *Bryant v. Steele*, 93 F. Supp. 3d 80, 90 (E.D.N.Y. 2015) (in Section 1983 cases against health care professionals, involving involuntary commitment and forced medication in private hospitals, "district courts in this Circuit have found that none of the three tests for state action—'state compulsion,' 'public function,' and 'close nexus'—were satisfied").

Because the named private hospitals were not functioning as state actors in hospitalizing and medicating Plaintiff against her will, her allegations do not give rise to Section 1983 claims against them. As to Brenda Horton, she appears to be a private individual. Nothing in Plaintiff's complaint suggests that Horton works for any state or other government body, and unless Horton is a state actor, Plaintiff cannot state a Section 1983 claim against her.

Accordingly, the Court dismisses Plaintiff's Section 1983 claims against the hospitals and Horton for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.    The NYPD**

Under Rule 17 of the Federal Rules of Civil Procedure, an entity's capacity to be sued is generally determined by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*." (emphasis in original)). New York City's Charter states that agencies of the City of

New York cannot be sued in the name of the agency, unless the law provides otherwise. N.Y.

City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the

violation of any law shall be brought in the name of the city of New York and not in that of any

agency, except where otherwise provided by law."). The New York City Charter does not

authorize the NYPD to sue and be sued in the name of the agency. *See* N.Y. City Charter ch. 17,

§§ 431-438 (establishing powers of the NYPD); *see also Jenkins v. City of New York*, 478 F.3d

76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."). Because the

NYPD lacks the capacity to be sued in the name of the agency, the Court dismisses Plaintiff's

claims against the agency for failure to state a claim on which relief may be granted. 28 U.S.C.

§ 1915(e)(2)(B)(ii).

It may be Plaintiff's intention to hold the City of New York liable for what occurred.

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to

allege that one of the municipality's employees or agents engaged in some wrongdoing. The

plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See*

*Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may

be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a

deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*

*v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d

Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must

allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the

policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones*

*v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).[2]

Plaintiff does not provide facts suggesting that a municipal policy custom or practice caused a violation of her constitutional rights. The Court grants Plaintiff leave to name the City of New York, should she wish to do so, and to allege facts should any exist in support of a municipal liability claim.[3]

## C.    Supplemental jurisdiction

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New*

---

[2] A plaintiff may satisfy the policy or custom requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of the those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

[3] The Court notes that disputes arising from state FOIL requests cannot give rise to claims under Section 1983. *See, e.g.*, *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 535 (S.D.N.Y. 2014) ("[M]any of Plaintiff's allegations—*e.g.*, that the Town refused to fulfill FOIL requests . . .—involve state law, not federal constitutional violations."). Where a plaintiff's state FOIL request is denied, the available remedy is to challenge that denial in a proceeding in state court pursuant to Article 78 of the New York Civil Practice Law and Rules. *See Hudson v. Cnty. of Dutchess*, 51 F. Supp. 3d 357, 370-71 (S.D.N.Y. 2014). Nothing in this order prevents Plaintiff from seeking such relief in state court.

*York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In light of Plaintiff's *pro se* status, the Court grants Plaintiff 30 days' leave to file an amend complaint to detail her claims as set forth in this order.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting under 28 U.S.C. § 1367.

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:    April 27, 2026
          New York, New York

_Louis L. Stanton_
Louis L. Stanton
U.S.D.J.

10